# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TANYA NAPOLD, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 17-584 |
| v. | ) |
| | ) Hon. Nora Barry Fischer |
| PARVATISHVER, LLC d/b/a QUALITY SUITES, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

This is an action in which Plaintiff Tanya Napold seeks to recover from Defendant Parvatishver, LLC d/b/a Quality Suites ("Parvatishver") for damages stemming from employment discrimination. After Parvatishver filed no answer to Plaintiff's complaint, default was entered. Liability having been determined, the Court held an evidentiary hearing to determine the amount of damages to which Plaintiff is entitled. Counsel for Parvatishver appeared but presented no evidence. Thereafter, Plaintiff filed proposed findings of fact and a motion for attorneys' fees and costs of litigation, as well as supporting exhibits and documentation. (Docket Nos. 41, 42). Parvatishver failed to counter. After careful consideration of Plaintiff's position presented in her motion and at the evidentiary hearing, and for the following reasons, judgment will be entered as follows against Parvatishver for back pay, front pay, compensatory damages, punitive damages, attorneys' fees, prejudgment interest, and costs.

### II. PROCEDURAL HISTORY

Plaintiff filed this action on May 4, 2017, asserting six claims against Parvatishver and Choice Hotels International, Inc. ("Choice") for discrimination in violation of Title VII and the Pennsylvania

Human Relations Act ("PHRA"); retaliation in violation of Title VII and the PHRA; wrongful discharge/termination; and intentional infliction of emotional distress. (Docket No. 1 at ¶¶ 41-77). Choice filed a Motion to Dismiss Plaintiff's Complaint and supporting briefing on August 30, 2017. (Docket Nos. 18, 24). Thereafter, Plaintiff filed a motion to dismiss Choice from the lawsuit, which the Court granted on October 23, 2017. (Docket Nos. 30, 31). The Court then amended the case's caption to reflect that Parvatishver is the only Defendant remaining in this lawsuit. (Docket No. 31).

On October 10, 2017, Plaintiff filed a request for entry of default against Parvatishver on the basis of its failure to plead or otherwise defend, which the Clerk of Court entered. (Docket Nos. 25, 26). On October 17, 2017, Plaintiff filed a motion for default judgment against Parvatishver. (Docket No. 28). The Court granted Plaintiff's motion and scheduled an evidentiary hearing regarding the determination of damages pertaining to said default judgment. (Docket Nos. 29, 32). The Court held the hearing and heard argument on November 28, 2017. (Docket Nos. 38, 40). Joseph Balestrino, Esquire appeared on behalf of Parvatishver but did not move to reopen the default judgment and presented no evidence. (Docket Nos. 38, 40). On February 1, 2018, Plaintiff filed proposed findings of fact and a motion for attorneys' fees and costs of litigation, as well as supporting exhibits and documentation. (Docket Nos. 41, 42). Parvatishver failed to counter.

Given that default judgment has been entered in favor of Plaintiff and against Parvatishver, the factual allegations in Plaintiff's Complaint are taken as true, except for allegations related to the amount of damages. *See Directv, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) ("Where a court enters a default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'") (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). Thus, considering Plaintiffs' allegations, which are deemed admitted, and the remainder of the record evidence, Parvatishver is liable to Plaintiff for discrimination in violation of Title VII and the

PHRA; retaliation in violation of Title VII and the PHRA; wrongful discharge/termination; and intentional infliction of emotional distress. (Docket No. 1 at ¶¶ 41-77).

The Court has largely adopted the proposed findings of fact submitted by Plaintiff because the Court, exercising its independent judgment, and after considering all of the record evidence, finds that Plaintiff was generally credible and agrees that Plaintiff's proposed factual findings are generally accurate. *See Bright v. Westmoreland County*, 380 F.3d 729, 731-32 (3d Cir. 2004) (holding that a district court's adoption of a prevailing party's proposed findings of fact and conclusions of law is not per se reversible error but explaining that the "findings of fact adopted by the court must be the result of the trial judge's independent judgment"). The Court now turns to its Findings of Fact and Conclusions of Law.

## III. FINDINGS OF FACT

1. Plaintiff is a thirty-seven-year-old African American female. (Docket Nos. 1 at ¶ 42, 41 at ¶ 1).

2. Plaintiff, who has a bachelor's degree in history and humanities, is pursuing her master's degree in journalism but has delayed her studies as a result of the impact of this matter. (Docket No. 41 at ¶ 1).

3. At twenty-one years old, Plaintiff suffered a brain aneurysm that affected her ability to concentrate on tasks and resulted in memory loss, difficulties with her peripheral vision, and anxiety attacks. (*Id.* at ¶ 2).

4. In her words, Plaintiff experiences circumstances "ten times" more, is unable to control her emotions, is always fearful that something could go wrong, and has difficulties articulating her thoughts. (*Id.*).

5. Plaintiff was deemed disabled as a result of these deficits, received services from various governmental agencies in Florida, and participated in intensive therapy for ten years. (*Id.*).

6. In or about July 2014, Plaintiff moved to Pittsburgh to complete her final project for her master's degree. (*Id.* at ¶ 3).

7. Upon relocating to Pittsburgh, Plaintiff was hired by Quality Suites through the Office of Vocational Rehabilitation's ("OVR") Ticket-to-Work Program. (*Id.* at ¶ 4).

8. OVR also referred Plaintiff for neurocognitive therapy, at which time she was diagnosed with attention deficit disorder ("ADD") and post-traumatic stress disorder ("PTSD") as a result of the aneurysm. (*Id.* at ¶¶ 4-5).

9. On or about December 18, 2014, Plaintiff began working at Quality Suites as a front-desk receptionist. (Docket Nos. 1 at ¶ 15, 41 at ¶ 6).

10. Quality Suites was aware of Plaintiff's deficits and received a benefit for hiring Plaintiff due to her disabled status. (Docket No. 41 at ¶ 6).

11. Sudhir Patel owned the Quality Suites at which Plaintiff worked, and Kim Thompson was Plaintiff's supervising manager. Docket Nos. 1 at ¶ 17, 41 at ¶ 6).

12. While working the 3:00-11:00 p.m. shift on or about June 14, 2015, Plaintiff was sexually assaulted by her co-worker, Charles Hall. (Docket Nos. 1 at ¶ 16, 41 at ¶ 7).

13. After Plaintiff called 911, Mr. Hall was arrested and subsequently convicted of sexual assault. (Docket No. 41 at ¶ 7).

14. That night, Plaintiff informed Mr. Patel and Ms. Thompson of the sexual assault by sending texts. (Docket Nos. 1 at ¶ 17, 41 at ¶ 8).

15. The next morning, Plaintiff received a call from John Sharpe, who was the manager of a Crowne Plaza that Mr. Patel owned and who had supervised Mr. Hall before he transferred to work at and live in the Quality Suites in or about February 2015. (Docket Nos. 1 at ¶ 18, 41 at ¶ 8).

16. Mr. Sharpe indicated that Mr. Patel was beside him and that he was calling at Mr. Patel's behest. (Docket Nos. 1 at ¶ 19, 41 at ¶ 8).

17. During the telephone call, Plaintiff requested time off to move and to ensure that she was safe before returning to work. (Docket Nos. 1 at ¶ 19, 41 at ¶ 9).

18. Mr. Sharpe agreed with Plaintiff and advised that he would speak with Mr. Patel. (Docket Nos. 1 at ¶ 19, 41 at ¶ 9).

19. Between the assault and the evening of the following day, Ms. Thompson texted Plaintiff and asked her to cover a shift that night. (Docket No. 41 at ¶ 10).

20. Plaintiff was so taken aback by Ms. Thompson's request that she did not respond to the text message. (*Id.*).

21. On or about June 16, 2015, after Plaintiff informed Mr. Patel that she would like to speak with him, he stated that he would speak with her but noted that he wanted Ms. Thompson to be present. (Docket Nos. 1 at ¶¶ 20-21, 41 at ¶ 11).

22. In response, Plaintiff indicated that she was not comfortable with Ms. Thompson's presence given her request that Plaintiff work the night after the sexual assault. (Docket No. 41 at ¶ 11).

23. Mr. Patel advised Plaintiff that Mr. Hall would not return to the premises because he had locked the room where he was previously living. (*Id.*).

24. On or about June 17, 2015, Plaintiff called the Center for Victims of Violent Crimes, which advised her to obtain worker's compensation information from Quality Suites. (*Id.* at ¶ 12).

25. When Plaintiff contacted Quality Suites, the individual working at the front desk was unable to locate the information. (*Id.* at ¶ 13).

26. On June 18, 2015, Plaintiff went to Quality Suites to speak to Mr. Patel about her request for time off and to obtain the worker's compensation information. (Docket Nos. 1 at ¶ 23, 41 at ¶ 14).

27. While searching the areas where employees frequently gathered, Plaintiff noticed that she had been marked as a no-call, no-show for at least the day after the sexual assault. (Docket Nos. 1 at ¶ 23, 41 at ¶ 15).

28. When Plaintiff asked Ms. Thompson for an explanation regarding the notation, she was told to discuss the matter with Mr. Patel. (Docket No. 41 at ¶ 15).

29. Plaintiff also asked Ms. Thompson about worker's compensation information, and Ms. Thompson responded, while standing near others at the front desk, that she would need to ask Mr. Patel because as far as she, Ms. Thompson, was concerned, Plaintiff was no longer working at Quality Suites. (Docket Nos. 1 at ¶¶ 24-25, 41 at ¶ 16).

30. Ms. Thompson then asked Plaintiff to leave and said that she would contact the police if Plaintiff refused to leave. (Docket Nos. 1 at ¶ 25, 41 at ¶ 17).

31. A frequent guest at the hotel spoke up in Plaintiff's defense, and other employees expressed their displeasure at Ms. Thompson's treatment of Plaintiff. (Docket No. 41 at ¶ 17).

32. After Ms. Thompson contacted the police, she laughed and joked upon the arrival of the same officers who responded to Plaintiff's 911 call on June 14, 2015. (Docket Nos. 1 at ¶ 26, 41 at ¶ 18).

33. On the day of her termination, Plaintiff was earning either $8.25 or $8.55 per hour and typically worked between thirty and forty hours per week. (Docket No. 41 at ¶ 19).

34. From March 2015 through the date of her termination, Plaintiff worked close to forty hours per week as a result of the concert season. (*Id.*).

35. Plaintiff was unemployed from June 18, 2015, until the beginning of December, when she sought employment through Robert Half, a temporary staffing agency. (*Id.* at ¶ 20).

36. Plaintiff received unemployment compensation during her period of unemployment, which Quality Suites did not contest. (*Id.*).

37. Because of the deficits related to her aneurysm, Plaintiff experienced significant mental anguish over Parvatishver's treatment of her. (*Id.* at ¶ 22).

38. Specifically, Plaintiff felt betrayed and did not know whom to trust for a long time. (*Id.*).

39. Parvatishver did not contact Plaintiff to request that she complete an incident report or to inquire about her emotional health. (*Id.*).

40. Plaintiff has had difficulties at work and has frequent crying episodes triggered by memories of the June 2015 incident, especially when she sees her male co-workers and unconsciously views them as potential threats. (*Id.* at ¶ 23).

41. As a result of her fear that she will be labeled and viewed with suspicion, Plaintiff has not shared details of the sexual assault and attributes her crying episodes to other causes. (*Id.*).

42. During therapy, Plaintiff had to relive the assault, which led to severe anxiety before and after therapy. (*Id.* at ¶ 24).

43. Plaintiff experienced similar occurrences when she attended hearings related to Mr. Hall's criminal prosecution. (*Id.*).

44. As a result of her difficulties, Plaintiff has put her education on hold, has struggled to find employment, and has been evicted a few times due to financial issues. (*Id.* at ¶ 25).

45. Since November 28, 2017, Plaintiff has been cleaning at a bar/restaurant on Friday and Saturday nights and Sunday mornings. (*Id.* at ¶ 26).

46. Plaintiff earns $8.00 per hour and works approximately twelve hours per week. (*Id.*).

## IV. CONCLUSIONS OF LAW

47. As noted, the Court entered an Order granting default judgment in favor of Plaintiff and against Parvatishver on October 18, 2017. (Docket No. 29).

48. As is well established in the Third Circuit, when a court enters a default judgment against a defendant, the factual allegations of the plaintiff's complaint, except those relating to the amount of damages, must be taken and accepted as true. *Pepe*, 431 F.3d at 165 n.6.

49. Put simply, when a plaintiff prevails by default, as Plaintiff has in the instant action against Parvatishver, said default is treated as an admission of the facts alleged within the plaintiff's complaint. *Rainey v. Diamond State Port Corp.*, 354 F. App'x 722, 724 (3d Cir. 2009).

50. In accordance with the default judgment entered in the instant action, when accepting the factual averments of Plaintiff's Complaint as true, and the Court having found in its independent judgment that Plaintiff's proposed findings of fact are generally accurate, it is clear that Parvatishver discriminated and retaliated against Plaintiff in violation of Title VII and the PHRA, wrongfully discharged/terminated Plaintiff, and engaged in the intentional infliction of Plaintiff's emotional distress.

51. Pursuant to Federal Rule of Civil Procedure 55(b)(2), a court may conduct a hearing if it is necessary to "determine the amount of damages" or to "establish the truth of any allegation by evidence." FED. R. CIV. P. 55(b)(2)(B)-(C).

52. Therefore, as a result of the default judgment entered against Parvatishver on October 18, 2017, the factual allegations of Plaintiff's Complaint must be taken and accepted as true. However,

as the amount of damages still needed to be determined in the instant action, the Court conducted a hearing pursuant to Rule 55(b)(2) on November 28, 2017. (Docket Nos. 38, 40).

<u>Back Pay and Prejudgment Interest</u>

53. Title VII provides that "if the court finds that the [employer] has intentionally engaged in . . . an unlawful employment practice charged in the complaint, the court may . . . order such affirmative action as may be appropriate." *See* 42 U.S.C. § 2000e-5(g)(1).

54. The PHRA authorizes courts to "order affirmative action which may include, but is not limited to, reinstatement or hiring of employees, granting of back pay, or any other legal or equitable relief as the court deems appropriate." 43 Pa.C.S. § 962(c)(3).

55. Back pay is routinely awarded to successful Title VII and PHRA claimants. *Loeffler v. Frank*, 486 U.S. 549, 558 (1988); *Booker v. Taylor Milk Co.*, 64 F.3d 860, 864 (3d Cir. 1995).

56. Back pay is not reduced either by unemployment benefits collected by the plaintiff or by taxes that would have been paid on the income. *Dillon v. Coles*, 746 F.2d 998, 1006 (3d Cir. 1984); *Craig v. Y&Y Snacks, Inc.*, 721 F.2d 77 (3d Cir. 1983).

57. Pursuant to Title VII and the PHRA, "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5(g)(1); *Booker*, 64 F.3d at 864. Thus, a back pay award is "reduced by any amounts the plaintiff actually earned or could have earned through the exercise of reasonable diligence." *Gallo v. John Powell Chevrolet, Inc.*, 779 F. Supp. 804, 813 (M.D. Pa. 1991).

58. Back pay awarded to a plaintiff is the difference between the wages that the plaintiff would have earned absent discrimination and the wages that he or she actually earned. *See Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 156 (3d Cir. 1999). An award for back pay is calculated from

the date of unlawful termination to the date of judgment entered in the plaintiff's favor. *See Gallo*, 779 F. Supp. at 808.

59. The Court concludes that Plaintiff is entitled to an award in back pay for $15,325.37.

60. In calculating this back pay award, the Court determines that based upon an hourly wage of $8.40 per hour for thirty-five hours per week, Plaintiff would have earned $30,576.00 from June 18, 2015, until the date of this Order absent Parvatishver's discrimination.

61. The Court also determines that based upon Plaintiff's exhibit that was admitted at the hearing held on November 28, 2017, Plaintiff earned $15,250.63 from other sources of employment. (*See* Docket No. 38-1).

62. When a Title VII suit results in an award of back pay against a private employer, "there is a strong presumption in favor of awarding prejudgment interest, except where the award would result in 'unusual inequities.'" *See Booker*, 64 F.3d at 868; *see also Taxman v. Bd. of Educ. of Township of Piscataway*, 91 F.3d 1547, 1566 (3d Cir. 1996).

63. The Court finds no unusual inequities in this action. Accordingly, Parvatishver shall pay to Plaintiff prejudgment interest in an amount to be determined upon consideration of a motion for prejudgment interest and any response thereto as required in the following Order.

Front Pay

64. Front pay compensates a plaintiff for damages he or she can reasonably expect to suffer going forward from the date of judgment as a result of the unlawful termination. *See Blum v. Witco Chem. Corp.*, 829 F.2d 367, 374 (3d Cir. 1987). In awarding front pay, a court considers the nature of the plaintiff's work, whether he or she will be able to find comparable work, his or her life expectancy, and whether the evidence shows that he or she would have continued to work until age seventy. Although the calculation of such an award requires some speculation about future events,

the plaintiff need only prove damages without "unreasonable speculation," as the wrongdoing employer bears the risk associated with speculation. *Id.* at 376; *Bartek v. Urban Redevelopment Auth.*, 882 F.2d 739, 746 (3d Cir. 1989).

65. The Court finds that a reasonable front pay award period for Plaintiff is two years, as such a time period would allow Plaintiff to relocate to Florida where she has family.

66. Accordingly, Plaintiff will be awarded a front pay award of $30,576.00.

<u>Compensatory and Punitive Damages</u>

67. "In an action brought by a complaining party under [42 U.S.C. § 2000e-5] against a respondent who engaged in unlawful intentional discrimination . . . the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by . . . [42 U.S.C. § 2000e-5(g)]." *See* 42 U.S.C. § 1981a(a)(1).

68. Compensatory damages may be awarded for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." *See* 42 U.S.C. § 1981a(b)(3).

69. Punitive damages may be awarded if "the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *See* 42 U.S.C. § 1981a(b)(1).

70. A plaintiff demonstrates malice or reckless indifference to federally protected rights by showing that the employer "discriminate[d] in the face of a perceived risk that its action will violate federal law." *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999).

71. The Court finds that Plaintiff is entitled to compensatory damages of $40,000.00 because Parvatishver's discriminatory conduct caused her emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and fear.

72. The Court also finds that Plaintiff is entitled to punitive damages of $10,000.00 because Parvatishver discriminated against her with malice or reckless indifference to her federally protected rights. Further, Parvatishver ignored Plaintiff's plight and failed to respond to the circumstances of the sexual assault.[1]

Costs and Attorneys' Fees

73. "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1).

74. Pursuant to Title VII's attorneys' fees provision, a prevailing party is entitled to seek reasonable attorneys' fees and costs. 42 U.S.C. § 2000e-5(k) ("In any action or proceeding under this title [42 USCS §§ 2000e et seq.] the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs.").

75. "A 'prevailing party' is one that 'succeeded on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing the suit.'" *Torres v. Metro. Life Ins. Co.*, 189 F.3d 331, 333 (3d Cir. 1999) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

75. Plaintiff is a prevailing party in this action.

---

[1] Pursuant to 42 U.S.C. § 1981a(b)(3)(A), "The sum of the amount of compensatory damages awarded under this section . . . and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party . . . in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000." Plaintiff has not filed any pleadings or provided any evidence as to the number of Parvatishver's employees. The only publically available information regarding Parvatishver that the Court located does not provide information with respect to same. *See* https://www.corporations.pa.gov/Search/corpsearch. Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the Commonwealth's Department of State website. *See* FED. R. EVID. 201(b) (providing that a court may take judicial notice of a fact "that is not subject to reasonable dispute"); *see also Landair Transp., Inc. v. Del's Truck & Auto Repair*, No. 17-CV-723, 2018 U.S. Dist. LEXIS 26519, *7 n.1 (W.D. Pa. Feb. 20, 2018) ("Because the website in question here is owned and operated by the Pennsylvania Department of State, rather than by a private entity, the court finds that the facts contained on the site are authentic and that the source is not reasonably subject to dispute.") (citing *Abulkhair v. Comm'r of Soc. Sec.*, 450 F. App'x 117, 119 n.3 (3d Cir. 2011) (taking judicial notice of facts contained on official government website for the Social Security Administration)). Accordingly, the Court will limit the sum of the amount of Plaintiff's compensatory and punitive damages to $50,000.00.

76. Accordingly, Parvatishver shall pay Plaintiff's lawful costs incurred, as required in the following Order.

77. With respect to attorneys' fees, the Supreme Court in *Blum v. Stenson*, 465 U.S. 886, (1984), recognized that the initial estimate for attorneys' fees is obtained by multiplying a reasonable hourly rate by a reasonable number of hours expended in the litigation. *See Hensley*, 461 U.S. at 433 (1983). This formula, often referred to as the "lodestar," serves as an objective basis to make an initial assessment of the "value of the lawyer's services." *Id.* The United States Court of Appeals for the Third Circuit has adopted the community market rate rule to determine the lodestar. *Student Pub. Interest Research Group v. AT&T Bell Lab.*, 842 F.2d 1436, 1448 (3d Cir.1988). This rule requires the court to "assess the experience and skill of the attorneys and compare their rates to those of comparable lawyers in the private business sphere." *Id.* at 1447.

78. Here, Plaintiff's counsel has requested $31,080.00, for a total of 155.4 hours at $200.00 per hour. (Docket No. 38-1).

79. As an initial matter, the Court finds an hourly rate of $200.00 to be a reasonable rate. *See, e.g.*, *EEOC v. United States Steel Corp.*, 877 F. Supp. 2d 278, 285 (W.D. Pa. 2012) (noting that "no courts within this District have awarded more than $540 per hour as a reasonable rate").

80. The Court finds, however, that the number of hours expended on Plaintiff's matter are excessive. To this end, Plaintiff's counsel spent 107 hours preparing Plaintiff's Complaint. (Docket No. 38-1). The Court concludes that it is reasonable to spend two to three hours meeting with a plaintiff to review the facts of the case and to secure documents, including electronic documents. Plaintiff's Complaint, which is fourteen pages long, contained allegations of sexual discrimination and retaliation. (Docket No. 1). Such allegations are not unique, and the law within the Third Circuit is well established. The Court recognizes that Plaintiff's counsel is a general practitioner and, as a

consequence, may have required more time than a litigator who is entirely engaged in the employment arena. That said, the Court finds that, at most, relative to counsel's meeting with Plaintiff, drafting of the Complaint, reviewing the Complaint with Plaintiff, and redrafting and finalizing the Complaint for filing, counsel's billings should not have exceeded twenty-five hours.[2]

81. The Court finds that counsel's other billings are reasonable.[3]

82. Accordingly, in reducing counsel's time in preparing the Complaint from 107 hours to twenty-five hours, counsel's total time amounts to 73.4 hours.

83. At counsel's rate of $200.00 per hour, Plaintiff is entitled to recover $14,680.00 in attorneys' fees.[4]

## V. CONCLUSION

For the foregoing reasons, judgment shall be entered in favor of the Plaintiff, and against Defendant, Parvatishver, LLC d/b/a Quality Suites. An appropriate Judgment Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: February 28, 2018

cc/ecf: All counsel of record

---

[2] During the evidentiary hearing, Plaintiff's counsel testified that he has a Bachelor's degree in psychology and a Master's degree in clinical psychology. (Docket No. 40 at 77-78). As a result of his background, counsel may have spent more time with Plaintiff given the trauma that she endured. (*See id.* at 83). However, counsel's time spent with Plaintiff in his capacity as a therapist is not compensable as *attorneys' fees*. See 42 U.S.C. § 1988(b) (stating that the prevailing party may only recover reasonable attorneys' fees); *Arneault v. O'Toole*, No. 11-CV-95, 2014 U.S. Dist. LEXIS 190870, at *62 (W.D. Pa. June 6, 2014) (explaining that a prevailing party is only permitted to recover reasonable attorneys' fees).

[3] Counsel's billings ended on November 1, 2017. Counsel may file a supplemental fee request for his bills after November 1, 2017, through the date of this Judgment.

[4] In a parallel case that recently resolved short of trial, counsel opined that his fees to date were $15,000.00 in a case where the parties engaged in both written and deposition discovery and pretrial proceedings.